**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH L. HALSEY, | Civil Action No.: 2:15-cv-6311 (CCC) |
| Plaintiff, | |
| v. | |
| | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**CECCHI, District Judge.**

**I.   INTRODUCTION**

Before the Court is Plaintiff Deborah L. Halsey's ("Plaintiff") appeal seeking review of a final determination by the Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under §§ 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act ("SSA"). The issue to be decided is whether the Commissioner's denial of benefits is supported by substantial evidence. For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed in part, vacated in part, and the matter is remanded for further proceedings consistent with this Opinion.

1

## II. BACKGROUND

### A. Procedural Background

Plaintiff applied for disability insurance benefits and supplemental security income on November 26, 2012, alleging disability as of February 28, 2010. (Tr.[1] at 27). The application was denied initially in December 2013, and upon reconsideration in April 2013. (Id.) On May 20, 2014, a hearing was held before ALJ Kimberly L. Schiro. (Id.) ALJ Schiro issued a decision on August 20, 2014 finding Plaintiff was not disabled, as defined by the SSA. (Id. at 35 (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f))). Plaintiff requested review of the decision and the Appeals Council denied the request on November 20, 2014. (Tr. at 1). On August 20, 2015, Plaintiff instituted this action. (ECF No. 1).

### B. Factual Background

Plaintiff was born on April 26, 1957. (Id. at 20). She has a college degree and a Certified Nurse Assistant ("CNA") license. (Id. at 45-47). Plaintiff testified she lives with her teenage granddaughter whom she drives to and from school every day. (Id. at 45, 50-51). Plaintiff reported she makes meals for herself and her granddaughter, does laundry, goes food shopping, cleans around the house, and reads as a hobby. (Defendant's Brief Pursuant to Local Civil Rule 9.1 ("Def. Br.") ECF No. 10, at 3). Plaintiff indicated she uses a cane when she uses public transportation, although one of her treating physicians indicated in 2012 and 2013 Plaintiff was able to walk at a reasonable pace without the use of a hand-held assistive device. (Tr. at 49-50, 369, 389).

Plaintiff was employed with Essex County College from 1990 to 2006 as a clerk typist, which she testified she left because "it was time to move on and [she] wanted to work with children." (Tr. at 53-54). Plaintiff was employed as a teacher's aide at a charter school from April

---

[1] "Tr." refers to the certified record of the administrative proceedings. (ECF No. 6).

2

2006 to July 2006, and as a receptionist with a temp agency from January 2007 until she was laid off in February 2010. (Id. at 216, 173). Plaintiff attended full time courses from November 2011 to April 2012 and obtained her CNA license. (Id. at 47). Plaintiff worked on a per diem basis as a CNA from June 2012 to August 2012. (Id. at 45, 216).

Plaintiff sought treatment with Dr. Charles Granatir on June 22, 2009 for a low back injury incurred after she lifted a box at work on May 14, 2009. (Id. at 274). At this time, Plaintiff reported low back injuries from a bus accident in 1989 and a motor vehicle accident in 2005. (Id.) Dr. Granatir indicated Plaintiff had hypertension and was using Valium as medication. (Id. at 274, 279, 284). Dr. Granatir recommended physical therapy and Plaintiff underwent treatment for one month. (Id. at 274, 276, 279, 284). On July 28, 2009, Dr. Granatir indicated Plaintiff's "[p]ain has completely resolved," and she was able to "return to full work duty" on July 29, 2009. (Id. at 284, 288).

Plaintiff was seen five times by Dr. I. Ahmad for a spinal sprain from August 2010 until March 2012. (Id. at 298). In January 2011, Plaintiff underwent an MRI of her lumbar spine which showed mild bilateral facet joint hypertrophy, most prominent at L4/5, resulting in minimal L4 anterolisthesis, but without spinal canal or foraminal stenosis. (Id. at 296-97). A lumbar spine x-ray in August 2012 showed posterior facet arthropathy. (Id. at 395). An x-ray of Plaintiff's right shoulder in March 2012 indicated mild degenerative changes, with no evidence of acute fracture or dislocation. (Id. at 299).

In January 2012, Dr. Sandhya Shah noted Plaintiff's primary problems were unspecified essential hypertension, asthma unspecified, spinal stenosis of lumbar region, and morbid obesity. (Id. at 308). Dr. Shah also noted Plaintiff had diabetes mellitus type two without complication, and that her hypertension was well-controlled. (Id. at 310). Plaintiff visited Dr. Shah again in

3

February 2012 with left shoulder pain and backache, and was diagnosed with osteoarthritis. (Id. at 312-14). In March through June 2012, Plaintiff reported she was feeling well, but still had pain in her back and legs, and was trying to lose weight with diet and exercise. (Id. at 320, 324, 330).

Plaintiff made a series of emergency room ("ER") visits in 2012 and 2013. On June 9, 2012, Plaintiff presented with dizziness and was released when this symptom was resolved. (Id. at 336-37). In late June 2012, Plaintiff went to the ER for shortness of breath and was diagnosed with community acquired pnemonia. (Id. at 339-43). Plaintiff went to the ER in October 2012 for chronic low back pain and chest pain. (Id. at 346). Plaintiff testified she visited the ER in October 2012 after her back locked up while she was sitting and she could not move. (Id. at 48-49). In January 2013, Plaintiff went to the ER for joint pain. (Id. at 371-72).

Plaintiff was seen in December 2012 by Dr. Gloria Nwankwo, who indicated Plaintiff had a decreased range of motion in her hips bilaterally, cervical spine extension and lumbar spine, and positive straight leg raises in both supine and sitting. (Id. at 33). Dr. Nwankwo completed a second report in April 2013 in which her findings were unchanged. (Id.)

## III.   LEGAL STANDARD

### A.   Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

### B.     Determining Disability

Pursuant to the SSA, in order to be eligible for benefits, a plaintiff must show he is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the plaintiff's age, education, and work experience, disability will be evaluated by the plaintiff's ability to engage in his previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A person is disabled for these purposes only if his physical or mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

Decisions regarding disability will be made individually and will be "based on evidence

adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.     Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. Id.

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

### C.   Sequential Evaluation Process

The Social Security Administration follows a five-step, sequential evaluation to determine whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the plaintiff is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if he is not, the ALJ determines whether the Plaintiff has an impairment that limits his ability to work. Id. Third, if he has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of his impairment. Id. at 263. Fourth, the ALJ must consider whether the plaintiff's RFC is enough to perform his past relevant work. Id. Fifth, if his RFC is not enough, the ALJ must determine whether there is other work in the national economy the plaintiff can perform. Id.

The evaluation continues through each step unless it is determined at any point the plaintiff is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The plaintiff bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

## IV. DISCUSSION

### A. Summary of the ALJ's Findings

At step one, the ALJ found Plaintiff met the insured status requirements of the SSA and had not engaged in substantial gainful work activity since the onset date of the alleged disability. (Tr. at 29). Although Plaintiff had engaged in some work in 2012, the ALJ determined this work did not rise to the level of "substantial gainful activity." (Id.) At steps two and three, the ALJ found Plaintiff's impairments of osteoarthritis, hypertension, asthma and obesity were "severe," but not severe enough to meet, either individually or in combination, any of the impairments listed in 20 C.F.R. § 4014, Subpart P, Appendix 1. (Id. at 30-31).

The ALJ concluded Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with the exceptions that Plaintiff "cannot have concentrated exposure to fumes, odors, dusts, gases and poor ventilation." (Id. at 31). Additionally, the ALJ found Plaintiff "can occasionally climb, balance, kneel, stoop, crouch and crawl." (Id.)

To reach this conclusion, the ALJ considered all of Plaintiff's symptoms and their consistency with the evidence. Specifically, the ALJ considered Plaintiff's reports that her impairments affected her ability to lift, walk, climb stairs, squat, sit, bend, kneel, stand and complete tasks, and that occasionally her lower back locks up and she cannot move. (Id. at 31). In addition, the ALJ considered both Plaintiff's reports that she needed to use a cane for support around the house and when walking to the store, and her treating physician's report that Plaintiff did not use a hand-held assistive device and she could walk at a reasonable pace and ambulate freely. (Id. at 32).

The ALJ considered Plaintiff had a history of chronic back pain, for which she made prior

visits to the emergency room, where her pain was relieved with medication. (Id.) Additionally, one of Plaintiff's treating physicians, Dr. Shah, consistently reported Plaintiff's review of systems and physical examinations resulted in normal findings, normal range of motion of all joints, and normal strength of all muscle groups and that her hypertension was well-controlled. (Id.) The ALJ noted Plaintiff's emergency room visits for shortness of breath and took her asthma into consideration. (Id. at 33).

The ALJ found Plaintiff's statements of intensity, persistence and limiting effects of her impairments were not entirely credible, noting Plaintiff's return to school full-time after the alleged onset date undermined her credibility. (Id.) However, the ALJ did give some credence to Plaintiff's complaints and found her RFC limited Plaintiff to sedentary work, rather than light exertional work, as recommended by the state agency physicians. (Id. at 34).

At step four, the ALJ found Plaintiff capable of performing past relevant work as a clerk typist, performed by Plaintiff from 1990 through 2006, which requires work at the sedentary exertional level. (Id.)

### B. Analysis

Plaintiff makes the following arguments in support of her contention that the ALJ's decision should be remanded: (1) the ALJ's determination that Plaintiff did not meet an Appendix I Listing was not supported by substantial evidence as the ALJ did not consider the combined effects of obesity with Plaintiff's other impairments, (2) the RFC analysis was conclusory and was not supported by medical evidence, and (3) the ALJ's conclusion at step four was not supported by substantial evidence because she misinterpreted the responses to the hypothetical question by the vocational expert ("VE"). The Court will address each argument in turn.

### 1. The ALJ's Assessment of Plaintiff's Obesity was Insufficient

Plaintiff asserts this Court should remand due to the ALJ's failure to evaluate Plaintiff's obesity in accordance with Social Security Ruling ("SSR") 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002). (Plaintiff's Memorandum of Law ("Pl. M.") ECF No. 9, at 10). The Third Circuit addressed this issue in Diaz v. Commissioner of Social Security, where the ALJ found obesity was a severe impairment at step two, but failed to assess the impact of obesity on the claimant's other impairments at step three. 577 F.3d 500, 503 (3d Cir. 2009). The Diaz court noted the Commissioner's modification to the Appendix I Listing regarding obesity in 2000 served to replace "the automatic designation of obesity" based on height and weight with an "individualized inquiry." Id. This inquiry is meant to focus on "the combined effect of obesity and other severe impairments." Id. The court determined "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Id. at 504. In assessing the impact of claimant's obesity, the ALJ must discuss the evidence and explain her reasoning in a manner that would be "sufficient to enable meaningful judicial review." Id.

In this case, the ALJ identified Plaintiff's obesity as one of Plaintiff's severe impairments at step two. (Tr. at 29). The ALJ recognized she was required to consider Plaintiff's obesity in combination with her other impairments at step three, but merely explained the *possible* adverse impact obesity *may* have on co-existing impairments in general. (Id. at 30). Prior to her RFC analysis, the ALJ stated, "[i]n accordance with SSR 02-01p, I have taken obesity and it's [sic] limiting restrictions into consideration with the assignment of the [RFC]." (Id. at 31). Yet, the RFC analysis does not discuss whether Plaintiff's obesity has an adverse effect on her work function. (Id. at 32-34).

9

Diaz mandates that an ALJ meaningfully consider Plaintiff's obesity. 577 F.3d at 504. "A blanket statement that an ALJ has considered evidence is not the same thing as an ALJ actually discussing the evidence." Moore v. Comm'r of Soc. Sec., No. 2:11–05369, 2013 WL 941558, at *4 (D.N.J. Mar. 8, 2013). Here, the ALJ set forth a conclusory statement regarding Plaintiff's obesity, but failed to discuss how Plaintiff's obesity affected her other impairments.

Defendant argues the Court should rely upon Rutherford v. Barnhart, where the Third Circuit held remand is unwarranted, even if an ALJ fails to mention obesity, if a plaintiff fails to specify how her weight impaired her ability to work, particularly when the ALJ has relied on physicians who were aware of the plaintiff's weight and height. 399 F.3d 546, 553 (3d Cir. 2005) (Gov. Br. at 16). In Rutherford, the plaintiff did not identify obesity as an impairment and had "not specified how that factor would affect the five-step analysis undertaken by the ALJ, beyond .... [a] generalized" impact. 399 F.3d at 553. The Court concluded, "[b]ecause her doctors must also be viewed as aware of Rutherford's obvious obesity, we find that the ALJ's adoption of their conclusions constitutes a satisfactory if indirect consideration of that condition." Rutherford, 399 F.3d at 553.

In Diaz, "by contrast, [Plaintiff] asserted – and the ALJ specifically determined – that [Plaintiff's] obesity constituted a severe impairment." 577 F.3d at 504. The court concluded, "where [Plaintiff's] obesity was urged, and acknowledged by the ALJ, as a severe impairment that was required to be considered alone and in combination with her impairments at step three," and "absent analysis of the cumulative impact of [Plaintiff's] obesity and other impairments on her functional capabilities, we are at a loss in our reviewing function." Id.

Here, although Plaintiff did not assert obesity as an impairment in her Disability Report, she did provide medical evidence which indicated her weight "worsens her back pain." (Tr. at 233,

10

386) (when asked to list "physical or mental conditions that limit your ability to work," identifying arthritis and lower back pain, high blood pressure, and bronchial asthma). Moreover, as in Diaz, the ALJ acknowledged Plaintiff's obesity as a severe impairment as step two. (Id. at 29). Thus, the ALJ was required to consider Plaintiff's obesity alone and in combination with her impairments at step three and at every subsequent step. See Diaz, 577 F.3d at 504. Here, the ALJ did not adequately address Plaintiff's obesity, and the Court cannot provide meaningful review of this issue. The Court remands for the ALJ to consider the effects of Plaintiff's obesity in combination with her other impairments.

### 2. The ALJ Sufficiently Supported The RFC Analysis

Plaintiff asserts an RFC permitting Plaintiff to perform sedentary work is not supported by substantial evidence as the ALJ's determination is "merely conclusory and is not supported by the medical evidence." (Pl. M. 14, 15).

The Third Circuit in Burnett v. Commissioner of Social Security found the ALJ's step three analysis amounted to a "conclusory statement . . . beyond meaningful judicial review." 220 F.3d 112, 119 (3d Cir. 2000). The statement the court found to be conclusory was: "Although [Burnett] has established that she suffers from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix I, Subpart P of Social Security Regulations No. 4." Id. "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Unlike the ALJ in Burnett, ALJ Schiro considered and discussed all of the medical evidence and testimony in the record for four pages in her RFC analysis. (Tr. 31-34). Therefore, the RFC analysis is not

conclusory.

Second, Plaintiff asserts the ALJ's reliance upon Dr. Simpkins's and Dr. Nicastro's reports was improper because these doctors "relied on Dr. Granitir's report made in 2009" and Plaintiff's alleged onset date was in February 2010. (Pl. M. 14). It is undisputed that Plaintiff bears the burden of providing evidence that she did not have the RFC to perform any substantial gainful activity as of her alleged onset date. See 20 C.F.R. § 404.1545(a)(3) ("In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity."); Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.") (citing Ramirez v. Barnhart, 372 F.3d 546, 550 (3d Cir. 2004)). With the evidence provided, the ALJ must determine whether Plaintiff suffers from an underlying "medically determinable impairment that could reasonably be expected to produce [Plaintiff's] symptoms." 20 C.F.R. §§ 404.1529(b), 416.929(b).

Here, Plaintiff had the burden to produce medical records which showed she was unable to perform any substantial gainful activity as of the alleged onset date in February 2010. The medical records Plaintiff provided which chronologically followed Dr. Granatir's from 2009 were Dr. Ahmad's from August 2010. (Tr. 31-34). Plaintiff provided no intervening records to document a change in her health as of the alleged onset date in February 2010. Because Dr. Granatir's records were the last medical records provided before Plaintiff's alleged onset date, the ALJ properly relied upon these records in consideration of Plaintiff's health as of February 2010.

Next, Plaintiff argues the ALJ failed to consider all of the medical evidence regarding Plaintiff's inability to sit for a prolonged period of time. (Pl. M. 16). This argument is without merit. In her opinion, the ALJ discussed Dr. Nwankwo's findings which reported in December 2012 Plaintiff "had a decreased range of motion in her hips bilaterally, cervical spine extension

and lumbar spine, and the claimant had positive straight leg raises in both supine and sitting." (Tr. 33). The ALJ contrasted this evidence with Plaintiff's testimony that she went to school full time from November 2011 through April 2012 and worked on a per diem basis through August 2012, in addition to reports by Dr. Simpkins and Dr. Nicastro who opined that Plaintiff was capable of handling light exertional work. (Tr. 33-34).

"In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another." Diaz, 577 F.3d at 505 (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). "When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason. The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects." Plummet v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (internal citation omitted). Here, the ALJ considered all of the medical evidence and provided an explanation for why she chose to credit the opinions of Dr. Simpkins and Dr. Nicastro over Dr. Nwankwo's. (Tr. at 33-34) ("Dr. Nwankwo indicated that she could not provide, based on her medical findings, an opinion regarding the claimant's ability to do work related activities. . . . I give greatest weight to the State Agency medical consultants . . . . [T]he consultants' assessments are consistent with the medical evidence of the claimant's treating sources."). Accordingly, the Court finds the ALJ's consideration of the medical evidence to be supported by substantial evidence.

Next, Plaintiff asserts the ALJ improperly discredited Plaintiff's statements pursuant to SSR 96-7, which provides Plaintiff's "statements . . . may not be disregarded solely because they are not substantiated by objective medical evidence." (Pl. M. 11, Pl. R. 2 (citing SSR 96-7, 1996 SSR Lexis 4, at *2 (July 2, 1996))).

The ALJ must "evaluat[e] the intensity and persistence of [Plaintiff's] symptoms . . . and

determin[e] the extent to which [those] symptoms limit [Plaintiff's] capacity for work." 20 C.F.R. §§ 404.1529(c), 416.929(c). Although "serious consideration" must be given to a plaintiff's statements about her symptoms, Welch v. Heckler, 808 F.2d 264, 270 (3d Cir. 1986), "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). Such an inquiry necessarily requires that the ALJ determine "the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it." Id. (citing 20 C.F.R. § 404.1529(c)). In making such credibility determinations, the ALJ is given great discretion, and his findings are entitled to judicial deference. See generally Holley v. Comm'r of Soc. Sec., 590 F. App'x 167, 169 (3d Cir. 2014) (noting that an ALJ's credibility determinations regarding claimant's statements are entitled to deference); see also Metz v. Fed. Mine Safety & Health Review Comm'n, 532 F. App'x 309, 312 (3d Cir. 2013) ("Overturning an ALJ's credibility determination is an 'extraordinary step,' as credibility determinations are entitled to a great deal of deference.").

In this case, the ALJ determined Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." (Tr. at 18). The ALJ explained, Plaintiff "returned to school after her alleged onset date to obtain her license as a [CNA]," she attended a full-time course, worked from June 2012 through August 2012, and "stopped working in August 2012 because she injured her back while lifting a patient." (Id. at 33). The ALJ concluded Plaintiff's "return to school and performance of these work activities through August 2012 undermines her claims of disability." (Id.)

Plaintiff argues the ALJ "should not have discredited [P]laintiff's complaints" because Plaintiff's part-time work does not "rise to the level of substantial gainful activity and [] therefore,

14

[is] not a basis for a finding of not disabled." (Plaintiff's Letter Pursuant to Local Rule 9.1 ECF No. 7). However, "work done during the alleged disability period may show that the plaintiff can work at substantial gainful activity," even if the work did not rise to that level at the time. Schade v. Colvin, 2014 LEXIS 10585, at *19-20 (W.D. Pa. Jan 29, 2014) (citing 20 C.F.R. § 404.1571 (regarding work performed after the alleged onset date: "Even if the work you have done was not substantial gainful activity, it may show that you are able to do more than you actually did")); Russo v. Astrue, 421 F. App'x 184, 189 (3d Cir. 2011) (finding it notable Plaintiff continued working after alleged onset date even though that work did not reach the level of substantial gainful activity). Therefore, the Court finds the ALJ's determination of Plaintiff's credibility was supported by substantial evidence and affirms this finding.

Lastly, Plaintiff contends the ALJ failed to provide a function-to-function analysis as required by SSR 96-8p, 1996 SSR LEXIS 5, at *2 (July 2, 1996). (Pl. M. 15). SSR 96-8p requires a discussion of the "functions in paragraphs (b) [physical abilities], (c) [mental abilities,] and (d) [other abilities affected by impairments] of 20 C.F.R. §§ 404.1545 and 416.945." 1996 SSR LEXIS 5, at *2. In this case, the ALJ based her decision upon the state agency medical consultants and Plaintiff's subjective complaints. (Tr. at 33-34). See Neal v. Comm'r of Soc. Sec., 57 F. App'x 976, 979-980 (3d Cir. 2003) ("The findings of fact made by state agency medical consultants must be treated as expert opinion evidence of nonexamining sources at the ALJ and Appeals Council levels of administrative review.") (citing SSR 96-6, 1996 SSR LEXIS 3 (July 2, 1996)). The ALJ provided a function-to-function assessment, finding that the medical consultants found Plaintiff could occasionally lift, carry and pull 20 pounds; frequently lift, carry and pull 10 pounds; stand and walk for six hours; sit for six hours; and push and pull without limitation, except as indicated for her abilities to lift and carry. The medical consultants on which the ALJ relied

based their opinions on Dr. Granatir's records from 2009. (Tr. 34). See Neal, 57 F. App'x at 980. ("A state agency medical assessment is given weight only when it is supported by the evidence."). Although Plaintiff did not provide contrary medical evidence regarding her impairments at the time of the alleged onset date, the ALJ also explained that she gave weight to Plaintiff's subjective complaints in her assessment, and found Plaintiff's RFC was limited to sedentary work. (Tr. at 34). The Court finds the ALJ's RFC assessment complied with SSR 96-8p and was supported by substantial evidence.

### 3. The ALJ's Step Four Finding Was Supported By Substantial Evidence

Plaintiff argues the ALJ's conclusion at step four was not supported by substantial evidence because she did not accurately portray Plaintiff's impairments to the VE.

The ALJ in this case solicited the testimony of a VE to make a disability determination. (Id. at 34). A hypothetical question posed to a VE must "accurately portray the claimant's impairments" and "the expert must be given an opportunity to evaluate those impairments as contained in the record." Rutherford, 399 F.3d at 554. The Third Circuit has explained the impairments the expert must evaluate are only those credibly established in the medical record and not all the impairments the claimant alleges to have. Id. The Third Circuit "do[es] not require an ALJ to submit to the vocational expert every impairment *alleged* by a claimant." Id.

The hypothetical posed to the VE corresponded with the ALJ's RFC and accurately portrayed Plaintiff's impairments. Although the ALJ asked the VE a second hypothetical question regarding an individual who may have trouble sitting for extended periods of time, the ALJ sufficiently explained why she did not find Plaintiff's complaints regarding this impairment to be entirely credible in her RFC assessment. The Court finds the ALJ properly submitted the impairments that were supported by the record to the VE.

## V.     **CONCLUSION**

For the foregoing reasons, the Court will affirm in part and vacate in part the ALJ's decision and remands this case for further administrative proceedings consistent with this Opinion. An appropriate order accompanies this Opinion.

DATED: ___October 25___, 2016

                                                                                    _____
                                                                                    **CLAIRE C. CECCHI, U.S.D.J.**